Estate of Charles R. Jennings, Deceased, Citizens Fidelity Bank and Trust Company, Executor, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 88233. Filed November 20, 1962.

*Rucker Todd, Esq.*, for the petitioner.
*Arthur Clark, Jr., Esq.*, for the respondent.

OPINION.

Dawson, *Judge:* The respondent determined a deficiency in estate tax in the Estate of Charles R. Jennings in the amount of $11,965.94.

The only issue is whether the decedent's surviving spouse held a sufficient power of appointment over the proceeds of a life insurance policy so as to qualify such proceeds for inclusion in the estate tax marital deduction under section 2056(b)(6) of the Internal Revenue Code of 1954.[1]

All facts have been stipulated and are so found.

Citizens Fidelity Bank and Trust Company (hereinafter referred to as the petitioner) is a corporation duly organized and existing under the laws of Kentucky and has its principal place of business in Louisville. Petitioner is the duly appointed and acting executor of the Estate of Charles R. Jennings, who died September 18, 1957.

On November 13, 1958, the petitioner filed a Federal estate tax return with the district director of internal revenue at Louisville, Kentucky.

At the time of his death, Charles R. Jennings (hereinafter referred to as the decedent) owned a policy of insurance upon his life in the face amount of $25,000, issued by the Atlantic Life Insurance Company, now an operating division of Southwestern Life Insurance Company. The policy provided that "Atlantic Life Insurance Company agrees to pay $25,000, subject to all the provisions of this Contract, to Merle L. Jennings, wife of the Insured, at its Home Office, Richmond, Virginia, immediately upon surrender of this Contract and receipt and approval of due proofs of the death of Charles R. Jennings."

On February 27, 1947, a modification was added to the policy to provide the method of settlement upon the death of the insured. The modification reads as follows:

MODIFICATION OF CONTRACT NO. 172055 ON THE LIFE OF
CHARLES R. JENNINGS

to provide for the payment of the proceeds of this Contract in accordance with the "Optional Methods of Settlement" clause hereof in the event that the death of the Insured occurs at the time and under the circumstances hereinafter specified as conditions to the operation hereof.

It is especially stipulated that before the Company shall be obligated to make any payment herein provided to be made upon any one or more contingencies of birth, death, or survivorship, due proof of all of said events, satisfactory to the Company, must be submitted, and any act done or payment made by the Company in good faith based on such proof shall to the extent thereof be a complete discharge of the Company.

Any commuted value which may be payable in accordance with the terms hereof shall be calculated as provided by the clause entitled "Optional Methods of Settlement."

Unless otherwise provided, prior to the death of the Insured, by endorsement on the Contract by the Company upon written request, no beneficiary shall have any right to assign, encumber, or commute his or her interest in any payment,

---

[1] All references are to sections of the Internal Revenue Code of 1954.

and such payments to the full extent permitted by law shall in no manner be subject to the debts of any beneficiary nor to any legal process to levy upon or attach the same for the payment of any such debt.

Upon the death of the Insured, Merle L. Jennings, wife, surviving him, the proceeds hereof shall be held by the Company in trust in accordance with "Plan A" of said "Optional Methods of Settlement" clause until the death of and with interest thereon paid monthly to said wife, provided, however, that on any interest payment date and provided, unless waived by the Company, she shall have given at least ninety days previous notice in writing of her election so to do, said wife shall have the right in her sole discretion to withdraw from the amount held in trust Five Hundred Dollars ($500.00) or multiples thereof, provided, further, that if by virtue of such withdrawals the amount at any time remaining in trust shall be reduced to an amount less than One Thousand Dollars ($1,000.00) the trust shall thereupon terminate at once and the remaining amount held in trust shall be paid immediately in one sum to said wife. Interest on the amount or amounts withdrawn pursuant hereto shall immediately cease on the date of each such withdrawal.

Upon the death of said wife prior to the first anniversary of the Insured's death and prior to withdrawal of the entire amount held in trust hereunder the trust shall thereupon terminate at once and any amount remaining in trust shall be paid immediately in one sum to the Executors or Administrators of the Insured.

Upon the death of said wife on or after the first anniversary of the Insured's death and prior to withdrawal of the entire amount held in trust hereunder the trust shall thereupon terminate at once and any amount remaining in trust shall be paid immediately in one sum to the Executors or Administrators of said wife.

The insurance policy was in full force and effect at decedent's death; and upon his death the proceeds of the policy became payable in accordance with the provisions of the policy and of the modification.

Merle L. Jennings is the surviving spouse of Charles R. Jennings and is the beneficiary under the insurance policy.

By letter dated February 13, 1962, Merle L. Jennings requested the insurance company to pay her the principal amount of the funds remaining in trust, and on March 1, 1962, the insurance company sent Merle L. Jennings a check for $25,023.92, representing withdrawal in full of the funds held in trust together with accrued interest thereon.

In the Federal estate tax return the petitioner included the face amount of the insurance policy in determining the value of decedent's gross estate and in computing the marital deduction. Respondent disallowed the amount of the insurance policy as a part of the marital deduction on the ground that Merle L. Jennings "did not have a general power of appointment."

We have two questions here: (1) Did the power of appointment held by the surviving spouse over the insurance proceeds come into existence immediately following the decedent's death? (2) Were the limitations imposed upon the surviving spouse's withdrawal rights of such a substantial nature that they disqualified the power as not "exercisable in all events"?

Respondent contends that since the surviving spouse could withdraw the proceeds of the policy only on an interest due date after 90 days prior notice to the insurance company, she was prevented from exercising the power in favor of herself at all times following the decedent's death and, therefore, the power was not in existence immediately after decedent's death. These two limitations on the power of appointment are sufficient by themselves, respondent urges, to disqualify the insurance proceeds for the marital deduction under section 2056(b)(6) of the Internal Revenue Code of 1954[2] and respondent's regulations.[3]

---

[2] SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

(b) LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(6) LIFE INSURANCE OR ANNUITY PAYMENTS WITH POWER OF APPOINTMENT IN SURVIVING SPOUSE.—In the case of an interest in property passing from the decedent consisting of proceeds under a life insurance, endowment, or annuity contract, if under the terms of the contract such proceeds are payable in installments or are held by the insurer subject to an agreement to pay interest thereon (whether the proceeds, on the termination of any interest payments, are payable in a lump sum or in annual or more frequent installments), and such installment or interest payments are payable annually or at more frequent intervals, commencing not later than 13 months after the decedent's death, and all amounts, or a specific portion of all such amounts, payable during the life of the surviving spouse are payable only to such spouse, and such spouse has the power to appoint all amounts, or such specific portion, payable under such contract (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), with no power in any other person to appoint such amounts to any person other than the surviving spouse—

(A) such amounts shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and

(B) no part of such amounts shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse.

This paragraph shall apply only if, under the terms of the contract, such power in the surviving spouse to appoint such amounts, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

[3] Sec. 20.2056(b)–6 Marital deduction; life insurance or annuity payments with power of appointment in surviving spouse.

(a) *In general.* Section 2056(b)(6) provides that an interest in property passing from a decedent to his surviving spouse, which consists of proceeds held by an insurer under the terms of a life insurance, endowment, or annuity contract, is a "deductible interest" to the extent that it satisfied all five of the following conditions (see paragraph (b) of this section if one or more of the conditions is satisfied as to only a portion of the proceeds):

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(3) The surviving spouse must have the power to appoint all or a specific portion of the amounts so held by the insurer to either herself or her estate.

(4) The power in the surviving spouse must be exercisable by her alone and (whether exercisable by will or during life) must be exercisable in all events.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(e) *Powers of appointment.* (1) In determining whether the terms of the contract satisfy the conditions in subparagraph (3), (4), or (5) of paragraph (a) of this section relating to a power of appointment in the surviving spouse or any other person, the principles stated in § 20.2056(b)–5 are applicable. As stated in § 20.2056(b)–5, the surviving spouse's power to appoint is "exercisable in all events" only if it is in existence immediately following the decedent's death, subject, however, to the operation of § 20.2056(b)–3 relating to interests conditioned on survival for a limited period.

Sec. 20.2056(b)–5 Marital deduction; life estate with power of appointment in surviving spouse.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(g) *Power of appointment in surviving spouse.* (1) The conditions set forth in para-

We disagree. Our decision in the *Estate of John J. Cornwell*, 37 T.C. 688 (1962), which was factually similar and involved the almost identical provisions of section 812(e)(1)(G), I.R.C. 1939, is controlling on this point. We there held that the surviving spouse's withdrawal rights came into existence immediately upon her husband's death.

Next, respondent maintains that the surviving spouse's power of appointment to herself by withdrawal was unperfected and contingent under the terms of the insurance policy because, if she had died prior to the first anniversary of the decedent's death and prior to withdrawal, the proceeds would have been payable to the executors and administrators of the decedent. The example given by respondent to illustrate the point is this: If prior to the first anniversary of the decedent's death, the surviving spouse had notified the insurance company of her election to withdraw the proceeds but had died before the interest due date next following 90 days' notice, the proceeds would have been payable to the executors or administrators of the insured rather than those of the surviving spouse.

We doubt the soundness of this argument. We question whether notice and the arrival of the proper interest payment date are conditions precedent to withdrawal. We think the term "prior to withdrawal," as contained in the modification attached to the insurance policy, means that an application for withdrawal submitted by the surviving spouse to the insurance company would constitute an unqualified right to receive the proceeds. If an insurance contract is so drawn as to be equivocal, uncertain, or ambiguous, and to require an interpretation fairly susceptible of two or more different constructions, the one will be adopted which is most favorable to the insured or his beneficiary. See Couch, Insurance sec. 15.73 (2d ed.). It is quite obvious that our construction will benefit the surviving spouse from a tax-savings standpoint by reducing the amount of decedent's estate tax liability. In the absence of any evidence to the contrary, we so construe the insurance contract, recognizing the common practice of most insurance companies in treating an application for withdrawal of funds as being the "withdrawal." This is a fair and reasonable interpretation of the provision in the light of all the

---

graph (a) (3) and (4) of this section, that is, that the surviving spouse must have a power of appointment exercisable in favor of herself or her estate and exercisable alone and in all events, are not met unless the power of the surviving spouse to appoint the entire interest or a specific portion of it falls within one of the following categories:

  (i) A power so to appoint fully exercisable in her own favor at any time following the decedent's death (as, for example, an unlimited power to invade) ; or

  (ii) A power so to appoint exercisable in favor of her estate. Such a power, if exercisable during life, must be fully exercisable at any time during life, or, if exercisable by will, must be fully exercisable irrespective of the time of her death (subject in either case to the provisions of § 20.2056(b)–3, relating to interests conditioned on survival for a limited period) ; or

facts and circumstances here involved. Cf. *Eggleston* v. *Dudley*, 257 F. 2d 398 (C.A. 3, 1958). We will not interpret this provision of the insurance contract with meticulous adherence to the letter when it will lead us to a result in conflict with the spirit of the statute. Consequently, we do not regard this provision as a possibility of disability. It would be grinding the grist of the tax mill too fine for us to accept the contention that the surviving spouse had only a terminable interest resulting from a restricted power of appointment.

Unlike its defense in *Cornwell*, the respondent further asserts in this case that, even if the surviving spouse had a general power of appointment in existence immediately after the decedent's death, the limitations and conditions with respect to the power were substantial and not merely formal. Looking at each of these limitations, we find:

First, as to the insurance company's right to defer withdrawal for 90 days after notice, it is clear from respondent's regulation that a requirement "that reasonable notice must be given" is an example of a nondisqualifying *formal* limitation. This requirement is designed to protect a life insurance company against a possible run on its funds. Without the provision a sudden flood of withdrawal requests might make it impossible for an insurer to carry out an orderly liquidation of its investments to meet such demands. Most of the life insurance companies require such notice or deferral provisions.

The second limitation is the requirement that the withdrawals be made only on interest due dates. This was inserted for the convenience of the insurance company in an effort to simplify administrative work. Again it appears that respondent's regulation expressly recognizes such a limitation as nondisqualifying since it approves a requirement "that reasonable intervals must elapse between successive partial exercises" of a power.

The third limitation is the requirement that withdrawals be in multiples of $500. This was made for the convenience of the insurance company to prevent it from inadvertently being put into the position of having to make frequent small payments, which would result in high administrative costs. Since it obviously affects only the manner of exercising the power to withdraw, it is merely a limitation of a formal nature.

Finally, as pointed out earlier in this opinion, we do not believe the provision contained in the insurance contract regarding the surviving spouse's death prior to the first anniversary of decedent's death and prior to withdrawal is a substantial limitation which will disqualify the insurance proceeds for inclusion in the marital deduction. We will not strain to reach the interpretation urged upon us by respondent because we are not persuaded that the true meaning of section

2056(b)(6) should be frittered away by an argument so technical and tenuous.

Insofar as the result herein may be inconsistent with *Werbe's Estate* v. *United States*, 273 F. 2d 201 (C.A. 7, 1959), we respectfully decline to follow that decision.

Accordingly, we hold that the surviving spouse's power of appointment came into existence immediately upon her husband's death and was exercisable during her lifetime "in all events" so as to qualify the insurance proceeds for the marital deduction in computing the estate tax liability of the decedent.

To provide for certain adjustments to the taxable estate,

*Decision will be entered under Rule 50.*